No. 36,348

The State of Kansas, *Appellee*, v. Jim Smith, *Appellant.*

(163 P. 2d 353)

Opinion filed November 10, 1945.

*W. H. Coutts, Jr.,* of El Dorado, argued the cause for the appellant.

*M. F. Litras,* county attorney, argued the cause, and *A. B. Mitchell,* attorney general, and *Leon W. Lundblade,* assistant attorney general, were on the briefs for the appellee.

The opinion of the court was delivered by

Harvey, C. J.: Jim Smith, hereinafter called defendant, was charged, under G. S. 1935, 21-549, in the district court of Butler county, with having received on or about August 2, 1944, seven chains and three boomers of the value in excess of $20, the property of Lawrence Matthews, which recently had been stolen from him, well knowing that the property had been stolen. A jury trial resulted in a verdict of guilty, upon which sentence was pronounced. Defendant has appealed and presents fourteen assignments of error, which later will be noted.

Counsel for appellant, in the preparation of his abstract, ignored our Rule No. 5 requiring the abstracting of testimony and printed a transcript of that part of the testimony apparently regarded as

being more favorable to defendant, and counsel for the state, in a counter-abstract, printed the transcript of that part of the testimony most favorable to the state, and which had been omitted from the abstract of appellant. Notwithstanding this, we have examined the abstracts with care and find there is little material conflict in the testimony.

The facts, which the record indicates were not seriously controverted, if at all, may be stated as follows: Lawrence Matthews conducts a trucking business at El Dorado, hauling heavy oil-well equipment. The chains and boomers in question are used and are necessary to be used in loading and unloading such equipment. One of his truck drivers was Lloyd Miller, who had been in Matthews' employ about five years, most of which time he had been driving a truck hauling such equipment. He lived in El Dorado and sometimes parked his truck on the street in front of his residence, leaving his chains and boomers on the truck. On Monday morning, July 31, 1944, he missed one of his chains, which had been marked with a cold shut. On Wednesday morning of the same week he missed six more chains and three boomers from his truck.

Defendant conducted a secondhand store in El Dorado and had been doing so for five years or more. Prior to that time, for perhaps fifteen years, he had been doing a trucking business in and about El Dorado and was thoroughly familiar with the kind of chains and boomers here in question and their use. Apparently he conducted this secondhand business alone. He had no lights in his place of business and hence did not keep it open of an evening. The bottom of the back door dragged heavily on the cement and he frequently left it open. It unbolted from the inside. He lived at the Royal Rooms, and it was his practice to retire early, to get up late in the morning and get to his store about 9:30 or 10:00 o'clock of a morning.

Dan McGlade, about 22 years of age at the time of the trial, and Ernest Huskey, aged 24, had lived about El Dorado and had been guilty of various infractions of the law. In November, 1941, both of them had pleaded guilty to the charge of burglary and larceny of the Roxy Theater at El Dorado and were sentenced to the reformatory at Hutchinson on November 28, 1941. Both had been paroled from that institution March 1, 1943, after which Huskey had been working quite steadily. McGlade had worked rather intermittently, a part of the time for Matthews. On August

2, 1944, they met in El Dorado and McGlade proposed to Huskey that they steal some chains and boomers from Lloyd Miller's truck and sell them to defendant. Huskey consented. That night, about 11:30 o'clock, they took from Miller's truck, which was parked in front of his residence, six chains and three boomers, which they carried and placed in the weeds near the back door of defendant's store. The chains were heavy and the young men made two trips, carrying a part of them each trip. They went back to get some more boomers when someone yelled at them and fired a pistol, and they ran. The next morning McGlade went to the store and waited for the defendant to come, which he did about 10:00 o'clock, and the chains were brought into the store.

Lloyd Miller missed the chains when he went to his truck about 7:30 o'clock Wednesday morning and reported the loss to the sheriff. Sometime in the morning, perhaps about 11:00 o'clock, the officers went to defendant's place of business and found the chains and boomers. Defendant told them McGlade had brought them in. They were the only chains and boomers in the store. There were seven chains and three boomers. The sheriff took them and kept possession of them until the trial. McGlade and Huskey were picked up by the officers, charged with the theft, admitted it, their paroles were revoked, and they were returned to the reformatory at Hutchinson. At the time of the trial they were brought to El Dorado to testify as witnesses for the state.

The material controverted question of fact is whether defendant knew the chains and boomers had been stolen. McGlade testified that he stole one chain from Miller's truck on Sunday night and the next day took it to the defendant and sold it to him for $2. At that time he asked defendant if he would buy any more, and defendant said he would buy a hundred of them if he could get them; that on Tuesday he met Huskey and told him they could get some chains and sell them to defendant, and Huskey agreed to go with him; that on Tuesday evening, about 8:00 o'clock, he talked with defendant in front of his store and told him he could get six chains and some boomers, and defendant told him he would give him $2 apiece for the chains and $1 apiece for the boomers; that he and Huskey got the chains and boomers that night about midnight, carried them to defendant's store and put them down in the weeds until morning; that the next morning he went to defendant's store and waited for him to come; that he came about ten o'clock; that he

told defendant that he had brought him more chains; that defendant went with him and opened the back door and helped him carry them in and agreed to pay him $2 for each of the chains and $1 for each of the boomers, but said, "You caught me just about broke"; that defendant gave him two one-dollar bills and told him to come back that afternoon. He was picked up by the officers before he went back. Respecting these matters defendant testified that he did not buy the one chain on Monday; that he did talk with McGlade in front of his store on Tuesday, but that it was sometime in the morning; that McGlade then asked him if he would buy some tools and he told McGlade that he didn't want them; that when he went to the store, about ten o'clock Wednesday morning, McGlade was there. There were also some customers, whom he waited on, and then went to the back part of the room where McGlade told him he had some things he wanted to sell; that the chains and boomers were already in the building; that he asked McGlade where he stole them and was told that they were Matthews' chains and were stolen from Miller's truck; that he told McGlade to take them out of the store, that he didn't want them, that the officers would be there in twenty minutes; that McGlade left by the front door, but did not take the chains away, and that in fact the officers were there in about the time he had estimated. He specifically denied that he ever told McGlade that he would purchase the chains, denied that he gave him any money for them, or promised him any money.

The principal point stressed by appellant in this court is that McGlade was a man unworthy of belief. His cross-examination disclosed that he had been a rather consistent petty criminal. On cross-examination McGlade not only admitted the burglary and robbery of the Roxy Theater, but admitted that he had committed perhaps as many as sixty crimes and had been arrested and either fined or sentenced to jail for as many as a dozen offenses. The cross-examination of defendant disclosed that he had had quite a criminal record; that he had been tried and convicted in Sedgwick county for highway robbery and served a term in the penitentiary, and that repeatedly he had been arrested for minor offenses. The weight to be given to the testimony of each of these witnesses was for the jury. If under all the facts and circumstances they believed the testimony of McGlade as distinct from that of defendant this court is in no position to say that the jury reached a wrong conclusion.

We take up now the other points argued by appellant: (1) That the chains and boomers were not properly identified. Matthews positively identified three of the chains as belonging to him and said the other chains and boomers were of the kind he used. Miller testified that all the chains and boomers were the ones he used on the truck and belonged to Matthews. McGlade and Huskey testified they took them from Miller's truck to defendant's store, and defendant told the sheriff that McGlade had brought them in. There is no lack of proper identity.

(2) Appellant complains that the testimony of Matthews and Miller as to the value of the chains was based upon an OPA ceiling price. That is hardly a correct analysis of their testimony. Matthews testified that four of the chains were 24 feet long and cost $12 each, that the other chains were 22 feet long and cost $10.50 apiece; that the boomers cost $5.50 each; that late in June, 1944, he bought a used truck with its equipment and inquired the OPA price on used chains and boomers and was told that it was 67½ percent of the cost, and gave this as a fair value of the chains. Miller testified that four of the chains which he identified as having an "American head" were as good as new and estimated their value at 90 percent of the cost; that the other three chains were lighter and had been pulled harder, and he estimated their value at 60 percent of the cost. Defendant testified that he had bought and sold used chains and boomers at his store and had bought some at sales, and that a reasonable price would be $2 each for the chains, $1 each for two of the boomers, and 75 cents for the others. Since this case was being tried in a locality where these chains and boomers were in general use it may be that the jury had some idea of their value. But, passing that, we think there is no just criticism of the testimony of Matthews and Miller as to their value, neither was there lack of evidence to show that their value was in excess of $20.

(3) That the court did not permit defendant to testify as to the value of the chains after he had qualified as an expert. This point lacks merit. Defendant testified as to their value. The only limitation we find in the record respecting defendant's testimony on this point was when defendant was asked a question, designed to bring out his knowledge of the value of such articles ten or fifteen years earlier, and the court expressed the view that was too remote. We think the observation was good.

(4) That the court allowed too extensive an examination of defendant on cross-examination as to unrelated offenses. The record indicates that counsel for the state had a record of those offenses, and when he undertook to ask about them, and objection was made, the court advised the jury that the matters being inquired into related only to the credibility of the witness; whereupon defendant's counsel admitted the record. The record was not introduced in evidence, but the county attorney asked questions concerning it, all of which were answered by the defendant without further objection of counsel. We see no error in this.

(5) That the court erred in refusing defendant's request to introduce in evidence a record pertaining to cases of the state's witnesses McGlade and Huskey. At the time those witnesses had pleaded guilty to the burglary and robbery of the Roxy Theater no evidence was taken, but before announcing judgment the court inquired of each of them as to previous offenses. Both of them answered, not under oath. McGlade told of the large number of offenses which he had committed, for some of which he had been prosecuted. Huskey told of a few that he had committed. The court reporter took down the statements and they appear later to have been transcribed. The court sustained the state's objection to the introduction of that record, but defendant's counsel inquired of each of those witnesses at length about each of the things they told the court on that occasion. We think defendant got the full benefit of that situation and that no error was committed in the court's ruling.

(6) That the court in its instructions did not accurately quote the statute under which defendant was being tried. It is true the court summarized the statute instead of quoting it at length, but there is no inaccuracy in the summary. This point is not well taken.

(7) That the court in its instructions summarized two other sections of the statute. These sections bring out the distinction between grand and petty larceny of property, depending upon its value, whether more or less than $20. While perhaps this was not essential, there was nothing wrong with it in view of the fact that the punishment for receiving stolen property, knowing it to be stolen, is the same as that for the larceny of property.

(8) It is contended the court failed to define and give the legal meaning of the word "receive" and the word "possession." This point is not well taken. The court gave one instruction on the word "receive," which is complete and accurate, and in four of the other

instructions the court explained in detail and as applied to the situation here what would constitute receiving of the property on the part of the defendant.

(9) That the court failed to follow the information as to the number of chains alleged to have been stolen and to have been received by defendant. The information gave the number as seven, but the evidence disclosed that one chain was stolen Sunday night and the other chains and boomers were stolen Tuesday night. There is perhaps some conflict in the evidence as to when the chain first stolen was taken to the defendant. McGlade's testimony indicates that was done Monday; under defendant's testimony they must all have been taken to his place at the same time. Perhaps for that reason in one of the instructions the court spoke of six chains. We cannot see how that difference was detrimental to defendant.

(10) Appellant complains that the court instructed the jury in substance that the appellant's past record was no criterion as to his guilt or innocence in the charge upon which he was being tried. That seems to us to have been favorable to defendant and forms no basis for his complaint here.

(11) It is contended the court erred by failing to instruct the jury on defendant's theory of defense. We see no basis for that contention. The defense was one of not guilty; that he had never had any talk or bargained with McGlade to the effect that he would buy the property, and that in fact as soon as he knew about it he told McGlade to take it out of his premises and that he would have nothing to do with it. The court gave complete instructions upon that theory of the case.

(12) That it was error for the county attorney to comment upon the failure of defendant's wife to testify in his behalf. There is nothing in the record before us to show that was done. No misconduct of the county attorney was mentioned in the motion for a new trial, so the record does not show that anything of that kind occurred, or, if so, it was ever called to the attention of the trial court. The county attorney in the state's brief denied that such a thing was done, and in the oral argument he stated that he had never heard of it until appellant's brief was filed. After the state's brief was filed counsel for the defendant procured the affidavits of a number of witnesses to the effect that they were present in the court room at the time of the argument and that such a statement was made by the county attorney. These affidavits have been filed in

this court. In addition to denying that the statement was made the county attorney has filed in this court records of the district court of Butler county showing that defendant and his wife were divorced sometime before the case was tried. This court declines to consider either the affidavits or the record of divorce. If there was any misconduct of that character it should have been called to the attention of the trial court promptly so the court might have admonished counsel and properly advised the jury. Certainly it should have been called to the attention of the court on the motion for a new trial. Controverted issues of that kind cannot be tried in this court on appeal. The point is not well taken.

(13) Complaint is made of overruling the motion for a new trial. Nothing is argued on that point other than matters hereinbefore mentioned.

(14) Defendant called two witnesses who gave some testimony in his behalf, none of which was very vital to this case. The county attorney, in cross-examination, asked them questions which pertained to their credibility. Counsel for appellant complains of that on the ground that it was not proper cross-examination. The point is not well taken.

There is really nothing in this case except a controverted question of fact, which we previously discussed. There was no error in any of the specific points argued by appellant. The judgment of the court below is affirmed.